IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAEDEKE HOLDINGS VII, LTD. and GAEDEKE OIL & GAS OPERATING, LLC, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:23-CV-00503-B |
| v. | § § § | |
| GREAT AMERICAN INSURANCE CO., | § § § § | |
| Defendant. | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

NOW COME PLAINTIFFS, Gaedeke Holdings VII, Ltd. ("GH VII," and individually a "Plaintiff") and Gaedeke Oil & Gas Operating, LLC ("GOGO," and individually a "Plaintiff") (collectively the "Plaintiffs") and file this *First Amended Complaint* complaining of Defendant, Great American Insurance Company ("Great American" or "Defendant"). For their causes of action, Plaintiffs would respectfully show the Court the following:

### I.   PARTIES

1. Plaintiff GH VII is a Texas limited liability company headquartered in Dallas County, Texas.

2. Plaintiff GOGO is a Texas limited liability company headquartered in Dallas County, Texas.

3. Upon information and belief, Defendant Great American is a foreign insurance company authorized to engage in the insurance business in the State of Texas. This Defendant has been served and has generally appeared in this case.

1

## II.     JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court. Plaintiffs seek monetary relief in excess of $1 million.

5. Pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002 and all applicable authority, venue is proper in Dallas County, Texas because (among other reasons) all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this County, and the insured loss that is the basis of this lawsuit also occurred in this County. Defendant remove this case to federal court pursuant to 28 U.S.C. §§ 1332 and 1441(a).

6. Defendant is subject to personal jurisdiction in this State because (among other reasons) it reached into Texas, wrote a policy of insurance to Texas companies, consented to be governed by Texas law, and submitted to jurisdiction before Texas courts.

## III.     CONDITIONS PRECEDENT

7. All conditions precedent to Plaintiffs' recovery have been performed, waived, or have occurred.

## IV.     AGENCY AND *RESPONDEAT SUPERIOR*

8. Whenever in this Complaint it is alleged that Defendant did any act or omission, it is meant that Defendant itself or its agents, officers, servants, employees, or representatives did such act or omission, and it was done with the full authorization or ratification of Defendant or done in the normal routine, course, and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## V. FACTUAL ALLEGATIONS

9. This lawsuit seeks insurance coverage for allegedly dishonest acts by a former employee and others who are not parties to this suit. Plaintiffs make these allegations based on information and belief, after a reasonable inquiry, and based on both currently available evidence and evidence reasonably expected to be uncovered during discovery.

10. This lawsuit involves a claim by two business entities (Plaintiffs) against an insurance company (Great American) relating to a commercial insurance contract providing coverage for losses caused by, among other things, employee dishonesty. Plaintiffs allege they are insureds under the Policy and have proven a covered loss, but Great American has failed and refused to pay the loss. Plaintiffs further allege that Great American has been impermissibly and unreasonably slow to decide coverage and communicate its coverage decision. Plaintiffs allege that Great American's actions constitute a breach of contract, and a failure to act in good faith and follow statutory requirements under Texas law.

11. Great American issued Policy No. SAA 5339233 14 00 (the "Policy"), which, in part, provides Employee Dishonesty insurance coverage to Plaintiffs for losses that may be covered by the Policy occurring at any time and discovered during the period June 6, 2019 through June 6, 2020 (the "Policy Period"). *See* Policy [Doc. 1-1]. The Policy at issue requires Great American to pay for losses arising from employee dishonesty, even if the benefits of that dishonesty go to a third party rather than the employe himself. *Id*.

12. During the Policy Period, Plaintiffs discovered that they had sustained a loss of money of the type covered by the Policy. This loss was caused by an employee's, Code Williams, dishonest acts. Specifically, Mr. Williams caused financial harm to Plaintiffs when he acted with manifest intent to cause Plaintiffs to sustain loss and obtain financial benefit (other than employee

benefits earned in the normal course of employment) for himself and/or another person. Plaintiffs shall refer to this loss and damage as the "Covered Loss."

13.     Mr. Williams was senior landman and Vice President, and he performed services for Plaintiffs and other related companies. His responsibilities included negotiating the acquisition of leasehold interest, purchase of minerals, exercising lease extensions and payments relating to exploration, and surface damages. He would also, at times, be responsible for approving payments for the purchases or payments to brokers for the reimbursement of leasehold costs, on behalf of Plaintiffs and others, with funds provided partly by Plaintiffs.

14.     Non-exclusive examples of alleged wrongdoing that caused the Covered Loss include the following:

    a.     Grande Oil & Gas, Inc. ("Grande") and Charles Al Swanson, land brokers working on behalf of Plaintiffs, represented to one or both Plaintiffs that they needed to pay certain amounts to mineral owners or other third parties for a variety of things, including lease extensions. Based upon those representations, Plaintiffs paid the requested amounts to the brokers to pass on to the third parties. Yet, canceled checks received directly from Grande's bank, reveal that Grande and Mr. Swanson did not pay the full invoiced amounts to the third parties, in some instances did not obtain the lease extensions as represented, submitted doctored "cancelled" checks to support reimbursement, and appear to have wrongfully retained the difference for their own purposes. On information and belief, Williams helped to perpetuate and conceal this scheme.

    b.     On or about August 25, 2019, Williams represented to Plaintiffs that Grande and Swanson obtained for Plaintiffs new five-year lease extensions from mineral owners Mary and Charles Melear. Yet, no later than August 30, 2019, Williams learned that the Melear leases were only extended for two years, not five. Afterwards, Williams did not correct his August 25, 2019

statement to Plaintiffs despite numerous requests for information on these specific leases. Instead, Williams willfully withheld this information from Plaintiffs.

    c.    Williams knew no later than August 30, 2019 that Swanson and/or Grande paid the two Melear lessors a total of only $18,290.50 for the lease extensions. Yest, at that time, Williams knew that Plaintiff Gaedeke Oil & Gas, Inc. had paid Grande a total of $91,452.50 based on Grande's representation that this amount would be paid in full to the Melear lessors to obtain lease extensions. Williams willfully withheld this information from Plaintiffs so that his accomplice Grande could keep the remaining $73,162.00 for itself. To date, this money has still not been repaid.

    d.    Plaintiffs allege that Grande and Mr. Swanson perpetrated multiple additional schemes, including altering checks before submitting them to Plaintiffs; failing to transfer title to oil and gas interests acquired on behalf of Plaintiffs; wrongfully invoicing (and accepting payments from) Plaintiffs twice for the same expenses; inducing Plaintiffs to pay various other invoices that turned out to be fraudulent, altered, or unsupported; and otherwise failing and refusing to properly account for Plaintiffs' funds.

    15.    Based on their investigation and evidence, Plaintiffs concluded that the losses for which they seek insurance coverage resulted from wrongful conduct by parties involved in the transactions listed above (and likely others), namely (at a minimum) Grande, Mr. Swanson, and Stamps Brothers Oil and Gas, LLC (together, "Alleged Co-Conspirators") along with Mr. Williams. In his role as senior landman and Vice President of Land, Mr. Williams was the primary interface and point of contact between Grande and Mr. Swanson on the one hand, and the Plaintiffs on the other hand. Plaintiffs' investigation has determined that Williams was involved in the schemes alleged herein (among, likely, others) in a dishonest manner. For example, Plaintiffs have

reviewed certain title documents and uncovered evidence that directly contradicted statements Mr. Williams had previously made regarding the status of certain payments and demonstrated that this contradiction could not have merely been a mistake. Since this conduct implicated Mr. Williams, Grande, and Mr. Swanson, this discovery also made Plaintiffs believe that Mr. Williams was involved in other alleged frauds of theirs. Dishonest conduct by Mr. Williams -- as opposed to mere negligence -- is the only way to explain why the frauds alleged herein were able to go on as long as they did. Mr. Williams and Mr. Swanson were close friends and former co-workers at another oil and gas company, and upon information and belief, Mr. Williams had been spending large amounts of money such as (at a minimum) buying a new truck and almost immediately paying off the note and spending a significant amount of money on a real property investment. When taken as a whole, the evidence shows that Mr. Williams was actively involved in, and helped to cover up, the fraudulent schemes apparently perpetrated against Plaintiffs.

16. The evidence shows that Williams' close friend and former co-worker defrauded Plaintiffs of millions of dollars; Williams was Plaintiffs' direct point of contact with the fraudsters; Williams was personally involved in the frauds—including helping to cover them up and lying about them to his employer; Williams' actions allowed the schemes to persist undetected; and, Plaintiffs ultimately uncovered title documents demonstrating Williams' lies regarding at least one of his schemes. Williams' active involvement with the fraudulent schemes described herein shows that Williams knew that the money being stolen came from Plaintiffs and his conduct was not a mistake—it was purposeful.

17. Plaintiffs allege, and believe the evidence shows, that Mr. Williams acted with manifest intent to (a) cause Plaintiffs' loss, and (b) derive improper financial benefits for himself

and/or others including the Alleged Co-Conspirators. The amount of improper benefit for which Plaintiffs seek insurance coverage exceeds $2 million.

18. In separate litigation, Plaintiffs have sued the Alleged Co-Conspirators. During that litigation, some or all of the Alleged Co-Conspirators have denied the allegations made against them, and to some extent, have denied allegations of Mr. Williams' involvement. Therefore, Plaintiffs acknowledge the existence of certain evidence that tends to contradict their claim for coverage (and have disclosed such evidence to Great American). However, Plaintiffs believe the Alleged Co-Conspirators have reason to be untruthful in their denials, since they themselves are accused of participating in the wrongful conduct. Moreover, despite multiple attempts, Plaintiffs have thus far been unable to obtain full discovery from Mr. Williams. So, although Plaintiffs allege their current evidence is more than sufficient, they also reasonably believe further evidence supporting their claims will be found once full discovery is taken.

19. Plaintiffs promptly and timely notified Great American of the Covered Loss and submitted a sworn Proof of Loss on May 14, 2021 (which was timely, pursuant to an extension negotiated with Great American). Thereafter, Great American made multiple requests for additional information, which Plaintiffs complied with. Despite Plaintiffs' full cooperation, Great American did not communicate its official coverage position (a Reservation of Rights letter finding that the Covered Loss was covered) to Plaintiffs until January 5, 2023 -- over 19 months after the Proof of Loss was submitted. Great American did provide Plaintiffs with an extension to file their Proof of Loss, and it also provided extensions of the Policy's purported two-year deadline to file suit to challenge its coverage decision (a deadline which Plaintiffs allege violates Texas law, in any event). However, the amount of time taken by Great American to perform its investigation and communicate its coverage decision was not reasonable. It was also unreasonable for Great

American to refuse to provide another extension of the purported two-year deadline once it finally made its coverage decision, thereby purporting to leave Plaintiffs with mere weeks to decide whether to file this lawsuit.

20. The Policy contains specific timeframes within which Great American was required to make and communicate coverage decisions: within 15 business days of receiving a proof of loss and all requested information, or within 45 days after notifying the insured of the need for additional time to reach a decision. *See* Policy [Doc. 1-1] at p. 51 of 68. Here, Great American breached the Policy by failing to timely investigate and communicate its coverage decision. Indeed, Great American took over 19 months from submission of Proof of Loss to issue a reservation of rights letter containing its coverage decision.

21. At all times, Plaintiffs have complied with all Policy terms. The Policy requires Great American to pay the Covered Loss, but it has failed and refused to do so.

## VI.  CAUSES OF ACTION

**1.  Breach of Contract**

22. The foregoing allegations are incorporated herein by reference.

23. The Policy is a valid, enforceable contract. The Policy's terms unambiguously provide coverage for the Covered Loss, or alternatively, the terms are ambiguous and should be construed in favor of coverage.

24. Plaintiffs allege that Great American has breached its contract of insurance (*i.e.*, the Policy) in at least the following ways:

   a. Denying that the Covered Claim is covered by the Policy, and refusing to pay, even though it is covered and Plaintiffs have complied with all applicable duties and Policy provisions; and

    b.  Failing to timely investigate the claim and communicate its written coverage decision, in violation of (at a minimum) the Policy's "TEXAS CHANGES - LOSS PAYMENT" endorsement.

25.  Great American's breach of the Policy has caused Plaintiffs substantial damages.

**2.  Bad Faith**

26.  The foregoing allegations are incorporated herein by reference.

27.  The Policy creates a common-law duty for Great American to deal fairly and act in good faith with Plaintiffs.

28.  Great American has breached its duty of good faith and fair dealing by, at a minimum, (a) failing to acknowledge coverage for Plaintiffs' claim; (b) failing and refusing to pay the claim; and (c) delaying its coverage decision on the claim.

29.  Plaintiffs have been damaged as a direct and proximate result of Great American's breach of its duty of good faith and fair dealing. Moreover, because Great American's bad faith was accompanied by malicious and intentional conduct, Plaintiffs are entitled to an award of punitive damages.

**3.  Violations of Chapter 541 of the Texas Insurance Code**

30.  The foregoing allegations are incorporated herein by reference.

31.  Pursuant to § 541.154 of the Texas Insurance Code, Plaintiffs provided sixty (60) days' notice of their intent to pursue a claim against Great American under § 541.151 of the Texas Insurance Code.

32.  Great American has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

33. Great American has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim, with respect to which Great American's liability is reasonably clear, by at a minimum, (a) failing to acknowledge coverage for Plaintiffs' claim; (b) failing and refusing to pay the claim; and (c) delaying its coverage decision, including on the pretext of requesting information that is not relevant to the claim or determination of coverage for the claim, or information that Great American already possessed.

34. By engaging in the same conduct, Great American has (a) failed to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts and applicable law, for Great American's failure to pay Plaintiffs' claim in violation of Section 541.060(a)(3); (b) failed within a reasonable time to affirm or deny coverage for Plaintiffs' claim in violation of Section 541.060(a)(4); and (c) failed to pay Plaintiffs' claim without conducting a reasonable investigation with respect to the claim in violation of Section 541.060(a)(7).

35. As a result of Great American's conduct, Plaintiffs have suffered damages in an amount no less than $2 million as well as attorneys' fees in an amount not less than $70,000.

36. Great American knowingly committed one or more of the violations referenced above, and Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

**4.    Attorneys' Fees**

37. The foregoing allegations are incorporated herein by reference.

38. Due to Great American's actions, Plaintiffs have been required to retain the services of the law firm of Phillips Murrah P.C.

39. Plaintiffs have agreed to pay Phillips Murrah a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas

Civil Practice & Remedies Code, Section 542.060 of the Texas Insurance Code, Section 541.152 of the Texas Insurance Code, and all applicable authority, Plaintiffs are entitled to an award of their reasonable attorneys' fees against Great American in an amount to be established at trial.

## VII. JURY TRIAL

40. Plaintiffs respectfully request a trial by jury.

## VIII. PRAYER FOR RELIEF

Plaintiffs pray that the Court render judgment in their favor awarding all damages (actual, punitive, treble, and otherwise) to which they are entitled; reasonable and necessary attorneys' fees and costs; pre-judgment and post-judgment interest at the highest rate allowed by law; all costs of court; and all other relief to which Plaintiffs are entitled.

Respectfully submitted,

*s/ Angela M. Buchanan*
Angela Buchanan, Texas Bar No. 24059213
John M. Bunting, Texas Bar No. 24073974
PHILLIPS MURRAH P.C.
3710 Rawlins Street, Suite 900
Dallas, Texas 75219
Telephone: 469-485-7341
Facsimile: 214-434-1370
*ambuchanan@phillipsmurrah.com*
*jmbunting@phillipsmurrah.com*

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 20th day of June, 2023, a true and correct copy of this document has been delivered via eService to the following counsel of record:

Paul Simon
SIMON | PASCHAL PLLC
5300 Town and Country Blvd., Suite 155
Frisco, TX 75034

 - and -

Michael A. Graziano
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue
NW, 12th Floor
Washington, D.C. 20006

            */s/ Angela M. Buchanan*
            Angela M. Buchanan